# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sheila Finnegan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 5517 | **DATE** | 8/16/2012 |
| **CASE TITLE** | Lang Exterior, Inc. vs. Lang Windows, Inc. | | |

**DOCKET ENTRY TEXT**

Defendant Dionne Lang's Rule 12(b)(6) and (b)(1) Motion to Dismiss [72] is denied for the reasons set forth in the written opinion entered today.

■ [ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Plaintiff Lang Exterior Inc. ("Lang Exterior" or "Plaintiff") filed a seven-Count Verified Complaint against Lang Windows Inc. ("Lang Windows") and its founder Dionne Lang ("Dionne"), alleging (1) trademark infringement, unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1117 and 1125(a); (2) violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); and (3) state law claims for tortious interference with prospective economic advantage, unlawful conversion of Plaintiff's laptop computer, and violation of both the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636©.

On June 19, 2012, this Court granted Plaintiff's Motion for Default Judgment against Lang Windows after it failed to respond to the Verified Complaint. (Doc. 80). Dionne, the only remaining Defendant in this case, now seeks to strike or dismiss with prejudice all "trademark and related claims" set forth in Counts I through VI pursuant to Rule 12(b)(6), arguing that there are "no allegations or claims . . . that are couched as against Dionne in her personal capacity." (Doc. 72, at 1). Dionne also contends that if this argument prevails, then the remaining conversion claim (Count VII) must also be dismissed for lack of subject matter jurisdiction. For the reasons set forth here, the motion is denied.

### Background[1]

Plaintiff Lang Exterior is a "family-owned and family-run business" that has been selling windows and related products since 1953. (Doc. 1 ¶¶ 9, 12). The names "Lang" and "Lang Exterior" (the "Common Law Marks") are "highly-regarded in the window industry," and over the past 58 years, Plaintiff "has developed significant goodwill and recognition in its name and products." (*Id*. ¶ 8). In that regard, on July

30, 2002, the United States Patent and Trademark Office granted Plaintiff a registered trademark for "Lang Exterior & Design" (the "Registered Mark"). (*Id.* ¶ 10; Doc. 1-1).

Dionne is the daughter of Plaintiff's founder, Eugene Lang. Prior to May 31, 2011, she worked alongside her siblings as an authorized sales representative for Plaintiff. In that capacity, she at all times "operate[d] under the fictitious name 'Sammy Nelson,' and did not use her real name." (Doc. 1 ¶¶ 12-14). On May 31, 2011, Dionne quit her position with Lang Exterior. (*Id.* ¶ 14). The next day, she formed Lang Windows and started selling window products manufactured by Plaintiff's competitor, Silver Line Windows. (*Id.* ¶¶ 15, 16). The Lang Windows website, **www.langwindowsinc.com**, features a picture of Dionne with her father, Eugene, and states that she "proudly studied the window business under her father since the day she was born. . . . Through years of innovation she was highly trained by him and his ideas. Dionne Lang currently owns her own window company named Lang Windows Inc. and is proud to carry on her father's tradition." (*Id.* ¶ 17; Doc. 1-2). In addition, Dionne has advertised her company's products by sending numerous spam email messages to consumers, including Plaintiff's customers, using "the same wording and statements" and the same "Sammy Nelson" pseudonym that she used when she was a sales representative for Plaintiff. (Doc. 1 ¶ 20).

Plaintiff filed this lawsuit charging Dionne and Lang Windows with knowingly using "deceitful methods to give consumers the incorrect impression that Defendants are an authorized retailer of Lang," including unauthorized use of the Common Law and Registered Marks (collectively, the "Marks"). (*Id.* ¶¶ 22, 36, 40, 46, 51, 60). As noted, Plaintiff obtained a default judgment against Lang Windows. Dionne now claims that she cannot be held responsible for any of the conduct alleged in the Verified Complaint.[2]

**Discussion**

In evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "To survive a motion to dismiss, the plaintiff must do more in the complaint than simply recite elements of a claim; the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. *See also Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010). Although a "formulaic recitation of the elements of a cause of action will not do," *id.* at 1949, a plaintiff need provide "only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

Dionne argues that all of the allegations in the Verified Complaint "are couched as against" Lang Windows and not her personally. (Doc. 72, at 1). As a result, she says, Plaintiff can only hold her liable for the conduct if it pierces the corporate veil between her and the company. (*Id.* at 3) (citing *Bankers Trust Co. v. Chicago Title & Trust Co.*, 89 Ill. App. 3d 1014, 1019, 412 N.E.2d 660, 663 (1st Dist. 1980)) ("The distinction between a corporation and its owner may be disregarded only when recognition of the separate identities of the two would be fraudulent or promote illegality."). Plaintiff responds that it need not pierce the corporate veil in this case because it has alleged that Dionne herself actively participated in the infringing conduct. (Doc. 74, at 5). The Court agrees with Plaintiff.

| STATEMENT |
|---|

The Seventh Circuit has long held that corporate officers may be liable for their personal involvement in infringement or other tortious activities if there is a "special showing" that they acted outside the scope of their official duties. *Dangler v. Imperial Machine Co.*, 11 F.2d 945, 946, 947 (7th Cir. 1926). In this seminal case, the *Dangler* court identified three non-exclusive ways to demonstrate that a corporate officer acted "willfully or knowingly" such that he may be "held jointly with the company":

> [1] when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or [2] when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or [3] when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability.

*Id*. at 947.

"Despite its vintage, *Dangler* remains the law of this Circuit." *Syscon, Inc. v. Vehicle Valuation Servs., Inc.*, 274 F. Supp. 2d 975, 976 (N.D. Ill. 2003). *See also C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 857 (N.D. Ill. 2009) (applying the "special showing" requirement of *Dangler* "[c]onsistent with the weight of authority."). Indeed, courts have routinely denied motions to dismiss where the plaintiff alleged that an individual officer was personally involved in making or selling an infringing product. *See, e.g., Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 994 (7th Cir. 2004) (corporation's sole owner was "suable" where the plaintiff presented "some evidence that [he] may have been personally involved in the commission of the tort by his corporation."); *TRT Transp., Inc. v. Chicago Trolley Rentals, Inc.*, No. 11 C 3693, 2011 WL 4585580, at *3 (N.D. Ill. Sept. 30, 2011) (denying motion to dismiss where the officer allegedly "actively participated in" the wrongful acts, and "[i]t c[ould] be plausibly inferred . . . that [he] may have control over the operations at [the company] and may have some personal involvement in the activities of [the company]."); *C.S.B. Commodities*, 626 F. Supp. 2d at 857-58 (motion to dismiss denied where the complaint "sufficiently alleges that [the individual officer] personally participated in the manufacture or sale of the [infringing product].").

In this case, Plaintiff alleges that Dionne founded Lang Windows and deliberately selected a name designed to "tread upon and take advantage of the substantial goodwill and recognition Lang has developed in its Marks." (Doc. 1 ¶ 15). After establishing her competing business, Dionne personally sent email messages under her pseudonym, Sammy Nelson, using "the same wording and statements that [she] utilized when she was a sales representative on behalf of Lang." According to Plaintiff, Dionne sent these similar emails in an "attempt to confuse and trick consumers into thinking that [she and Lang Windows were] authorized by, affiliated with, or somehow connected to Lang." (*Id*. ¶ 20). Dionne further created a website featuring a picture of herself with her father, stating that she was "proud to carry on her father's tradition," and advertising a "New Lang Window Line." (*Id*. ¶¶ 17, 18).

Plaintiff alleges that it sent letters to Dionne requesting that she "cease her unauthorized and infringing conduct," but she continues to use Plaintiff's Marks in a way that is "likely to confuse a significant and substantial amount of actual and potential customers of Lang as to the source of the goods and services provided." (*Id*. ¶¶ 25-29; Docs. 1-5, 1-6, 1-7). These allegations more than satisfy the special showing requirement of *Dangler*. *See, e.g., For Your Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 21475905, at *3 (N.D. Ill. June 20, 2003) (denying motion to dismiss against Lori Greiner based on allegations that she co-founded the company, "personally imported, manufactured, and offered the allegedly infringing product for sale," personally appeared on the QVC [channel] promoting the allegedly infringing product," and advertised the product on the QVC website as "Silver Safekeeper by Lori Greiner."); *Syscon*, 274 F. Supp. 2d at 977 (plaintiff stated a claim against company president by alleging that he "personally

| STATEMENT |
|---|

directed and participated in allegedly infringing activity, as well as personally authorizing that activity.").

Dionne attempts to avoid this result by arguing in her reply brief that her actions were not illegal and, thus, do not "demonstrate a special showing of personal involvement in the wrongful conduct." (Doc. 81, at 1). Specifically, Dionne claims that (1) "[t]here is nothing illegal about deciding to use your surname when naming your own company"; (2) "[t]here is nothing illegal about a 'freelance sales representative' continuing to solicit sales leads when working for a competitor"; and (3) "[t]here is nothing illegal about continuing to use a pseudonym and sales style that one developed and utilized successfully for years." (*Id*. at 2).

As a preliminary matter, it is well-established that "arguments raised for the first time in a reply brief are waived." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Moreover, Dionne ignores the allegations that she engaged in all of these actions in a manner designed to take advantage of Plaintiff's Marks, reputation, and goodwill, and to mislead consumers into believing that she was selling genuine "Lang" windows when, in fact, she was selling Silver Line Windows manufactured by Plaintiff's competitor. Notably, Dionne offers no evidence that there were any other individuals besides herself involved in creating or running the Lang Windows enterprise, or in selecting the company name, domain name, and website content. Plaintiff's allegations create a plausible inference that Dionne personally participated in and directed the sale of infringing products as required by *Dangler* and *Iqbal/Twombly*, and her motion to dismiss must be denied.[3]

### Conclusion

For the reasons explained above, Plaintiff's Rule 12(b)(6) and (b)(1) Motion to Dismiss [72] is denied.

---

1  In reviewing this motion to dismiss, the Court accepts the Verified Complaint's factual allegations as true and draws all reasonable inferences in Plaintiff's favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010).

2  Dionne does not dispute that she may be personally liable for conversion of Plaintiff's laptop computer. Instead, she seeks to dismiss this pendent state law claim under Rule 12(b)(1), "[a]ssuming that this Court finds that Plaintiff has failed to state a veil-piercing theory against Defendant Dionne." (Doc. 72, at 4). *See RWJ Mgmt. Co. v. BP Prods. North Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (a district court "may decline to exercise supplemental jurisdiction over state-law claims if the court has dismissed all claims over which it has original jurisdiction.") (internal quotations omitted). As explained in this opinion, Dionne has no basis for dismissing Plaintiff's federal trademark allegations and, thus, her Rule 12(b)(1) motion need not be addressed.

3  Contrary to Dionne's assertion, the mere fact that Lang Windows ceased operations "shortly after counsel was retained for Defendants" in no way supports dismissal of this case. (Doc. 81, at 3 n.2). Dionne did not retain counsel until at least February 2012, some six months after Plaintiff filed this lawsuit on August 12, 2011. Moreover, to the extent that Defendants engaged in the alleged conduct for any period of time, Plaintiff is entitled to bring its claims and attempt to prove damages.